UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

ALEXIS WADE, on her own behalf and on behalf of others similarly situated,

Plaintiff,

v.

ELEMIS USA, INC.,

Defendant.

Case No. 2:26-cv-00515-KKE

Honorable Kymberly K. Evanson

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

i

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

# TABLE OF CONTENTS

Introduction.................................................................................................................... 1

Argument ...................................................................................................................... 1

    I.  Elemis's Rule 12(b)(2) motion should be denied. ................................................ 1

        A.   Wade has established a prima facie case of specific personal jurisdiction. ................... 2

        B.   Alternatively, the Court should allow discovery before final decision.......................... 8

    II. Elemis's Rule 12(f) motion should be denied.................................................................11

        A.   The negative implications of the Commerce Clause do not destroy commonality or predominance. ............................................................................................................... 12

        B.   Proving CEMA liability does not destroy commonality or predominance.................... 20

        C.   Exhibit A to the Complaint survives. ................................................................... 21

Conclusion ...................................................................................................................... 22

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

ii

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

**INTRODUCTION**

Washington's Commercial Electronic Mail Act (CEMA) and Consumer Protection Act (CPA) prohibit sending commercial emails containing "false or misleading information in the subject line" to recipients actually or constructively known to be Washington residents. Wash. Rev. Code § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). Elemis's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is fatally marred by its election to ignore Plaintiff Alexis Wade's well pleaded allegations that this is precisely what Elemis did: in support of the products it sells (and hopes to sell) into the Washington market, it knowingly sent marketing emails into the Washington market. No more is required to establish specific personal jurisdiction over Elemis for Wade's claims here. Even if Wade's Complaint did not make this straightforward prima facie showing, uncontradicted by anything in the eleven paragraphs submitted by Elemis's declarant, the inextricable intertwinement of jurisdiction with the merits would still require Wade to be afforded an opportunity to prove both after discovery. As for Elemis's alternative arguments under Rule 12(f), that Rule is a fundamentally inapt vehicle for Elemis's affirmative defense of Commerce Clause preemption and its Rule 23 class certification arguments—all of which fail even when taken on their own terms. Elemis's motion should be denied.

**ARGUMENT**

**I.      Elemis's Rule 12(b)(2) motion should be denied.**

On defendant's Rule 12(b)(2) motion supported only by written materials before any discovery has been taken, "plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[U]ncontroverted allegations in the complaint must be taken as true" and factual disputes are resolved in plaintiff's favor. *Id.* Discovery of jurisdictional facts should be allowed

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

"where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1217–18 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). And where "the jurisdictional facts are intertwined with the merits," such that "a decision on the jurisdictional issues is dependent on a decision of the merits," it is "preferable" that the jurisdictional determination "be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977). In such cases, again, plaintiff need only "establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials." *Id.*

### A.      Wade has established a prima facie case of specific personal jurisdiction.

Federal courts have personal jurisdiction over defendants who are "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Washington courts may exercise jurisdiction over out-of-state defendants if such exercise is authorized by the applicable long-arm statute and comports with due process. *Cox v. Gritman Med. Ctr.*, —F.4th—, 2026 WL 738569, at *3 (9th Cir. Mar. 16, 2026). Because Elemis addresses only the constitutional issue, *see* Mot. 5–10, so too does Wade. "For cases sounding in tort," the Due Process Clause of the Fourteenth Amendment permits the exercise of specific personal jurisdiction[1] if "(1) the defendant purposefully directs activities toward the forum state, (2) the plaintiff's claim arises out of or relates to those activities, and (3) an exercise of jurisdiction

---

[1] Plaintiff agrees with Elemis that she has not made a prima facie case of general personal jurisdiction. *See* Mot. 5–6.

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

2

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

would be reasonable." *Burri Law*, 35 F.4th at 1212. If plaintiff shows the first two elements, it is defendant's burden to show that the third has not been met. *See id.* at 1213.

### 1.     Elemis purposefully directed its activities toward Washington.

Purposeful direction is established where defendant "(1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state." *Id.* Knowingly sending prohibited marketing emails into the forum constitutes purposeful direction. *See Xmission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1312 (10th Cir. 2024) (finding jurisdiction over defendant for sending emails with false or misleading subject lines); *cf. Walden v. Fiore*, 571 U.S. 277, 289 (2014) (finding no jurisdiction) (Defendant never "contacted anyone in" or "sent anything" to forum state.).[2] Such knowledge may be "actual[] or constructive[]." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011). That is precisely what Wade pleads Elemis did here, *see* Compl. ¶¶ 89–98, 118, and precisely what CEMA requires her to prove. *See* Wash. Rev. Code § 19.190.020(1)–(2). Due process requires no more.

Elemis does not dispute that sending marketing emails is an intentional act, as of course it is. *See* Mot. 8 (quoting *Kelley v. Kirkman Grp., Inc.*, 2020 WL 4227301, at *3 (D. Or. July 23, 2020)) ("[S]ending an email … is an intentional act"); *see also Xmission*, 105 F.4th at 1310 ("There is no doubt PureHealth engaged in 'an intentional action' by sending newsletter emails"). So the only question is whether Wade has shown prima facie that Elemis aimed those emails at Washington, thereby causing harm it knew was likely to be caused in Washington. Elemis's arguments on this score simply ignore the nature of its own business as well as Wade's well pleaded

---

[2] Despite these obvious material differences, Elemis relies heavily on *Walden*. *See* Mot. 7–9. It is a poor fit for this case. *See Walden*, 571 U.S. at 290 n.9 (leaving "questions about virtual contacts for another day").

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

3

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

allegations. *Compare* Mot. 9 ("Plaintiff's Complaint does not allege that Defendant specifically targets Washington consumers, nor does her Complaint even allege Defendant knew Plaintiff was a Washington resident before allegedly sending her emails."), *with* Compl. ¶¶ 89–98, 118 (pleading that Elemis knowingly targeted Washington residents).

To be sure, when it comes to nationwide e-commerce platforms like Elemis, *see* Compl. ¶ 89; Vanegas Decl. ¶ 3, 6–8, ECF No. 26-1, "'something more' than mere passive nationwide accessibility [is] required to show express aiming." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 752 (9th Cir. 2025) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). But "the Supreme Court has considered and rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere" when it comes to specific jurisdiction. *Id.* at 757 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355, 363 (2021)). Indeed, "differential treatment" or "differential targeting" of the forum state is not required to satisfy the purposeful direction test. *Id.* at 758. Imposing such a requirement "would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states." *Id.* Instead, an e-commerce platform like Elemis "expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Id.* (internal quotation marks, brackets, citations omitted).

Just so here. Elemis's contacts with Washington—that is, selling its products into the forum, and sending emails into the forum to encourage the sale of its products in the forum—are of course its own choice and the core of its business, notwithstanding that Elemis operates its business nationwide. *See id.* at 759 (Among other contacts, "Shopify knows about its California

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

4

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

consumer base, conducts its regular business in California, contacts California residents, [and] interacts with them as an intermediary for its merchants").

But there is more still. As in *Briskin*, Elemis here "allegedly knew the location of consumers" because "its software secures geolocation information when the consumer clicks on an item." *Id.* at 756 & n.13; Compl. ¶¶ 92–94 (describing likely capabilities of Elemis's marketing platform). Elemis's declarant coyly states that it had "no information about Plaintiff's postal address or state of residence" before this action was instituted. Vanegas Decl. ¶ 11. But that is a studious evasion of Wade's uncontradicted allegations that, even without Wade's provision of a postal address or declaration of residency, Elemis may *infer* such information using its marketing platform, *see* Compl. ¶ 94, and the now commonplace tools of electronic consumer surveillance. *See id.* ¶¶ 95–96. And it says nothing at all about CEMA's constructive knowledge provision. *See* Compl. ¶ 97 (citing Wash. Rev. Code § 19.190.020(2)).

In short, Elemis knowingly does business in Washington and knowingly markets its products in Washington. From these uncomplicated premises flows the inevitable conclusion that Elemis knew the harm from its false or misleading marketing emails was likely to be suffered in Washington. *See Xmission*, 105 F.4th at 1312 ("[A]t the pleading phase, … it is a fair inference that the … defendant knew that the brunt of an injury to would be felt in the forum State once the first two prongs of the harmful-effects test are met." (internal quotation marks, brackets omitted)). No more is required to show it purposefully directed its activities to Washington. *See Ford Motor Co.*, 592 U.S. at 361 ("Ford does not contest that it does substantial business in Montana and Minnesota—that it actively seeks to serve the market for automobiles and related products in those States," or, in other words, that it "purposefully availed itself of the privilege of conducting activities in both places." (internal quotation marks, brackets omitted)).

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

5

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

**2.    Wade's claims arise out of or relate to Elemis's Washington-directed activity.**

The second element of the specific jurisdiction test asks whether plaintiff's claims "arise out of *or relate to* the defendant's contacts with the forum." *Id.* at 362. *Contra* Mot. 9 ("Plaintiff fails to meet her burden to show her claims *arise out of* Defendant's alleged Washington-related activities." (emphasis added)). This relationship need not be causal. *Ford Motor Co.*, 592 U.S. at 361. In *Ford*, the Court found a relationship sufficient to support jurisdiction where "Ford's business activities in the forum States (i.e., advertising, servicing vehicles) made it more likely that the plaintiffs' injuries occurred there." *Briskin*, 135 F.4th at 760. In other words, "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023), *cited by Briskin*, 135 F.4th at 760.

As in *Briskin* and *Ford Motor Co.*, so here, *a fortiori*. *See Ford Motor Co.*, *Briskin*, 135 F.4th at 760 (finding relatedness between plaintiff's privacy claims and defendant's forum contacts). Elemis's Washington contacts are constituted by the purposeful direction of its sales and marketing into the forum. *See* part I.A.1, *supra*. Injuries caused by false or misleading marketing self-evidently will tend to be caused by defendant's sales and marketing efforts. Indeed, even if causation were required (though it is not), still Wade would readily clear the relatedness bar. *See Xmission*, 105 F.4th at 1312–14; *cf. id.* at 1313 n.13 (noting "tension" between circuit precedent and *Ford Motor Co.*).

**3.    Asserting jurisdiction over Elemis would not be unreasonable.**

Wade has satisfied the first two elements of the specific jurisdiction test, so the burden now shifts to Elemis to show that the exercise of jurisdiction would nonetheless be unreasonable. *Burri Law*, 35 F.4th at 1213. Elemis fails to carry this burden.

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

6

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

Ninth Circuit courts apply a nine-factor test to assess jurisdictional reasonableness, *see Briskin*, 135 F.4th at 761 (enumerating factors), which Elemis neither recites nor applies. That failure in itself warrants denial of its motion.[3] Elemis's forfeiture notwithstanding, the balance of factors here weighs heavily in favor of jurisdiction: (1) As a nationwide e-commerce retailer, Elemis's efforts to exploit the Washington market have deeply interjected it into Washington's affairs. (3) There is no conflict with the sovereignty of New York (Elemis's principal place of business) or Delaware (its state of incorporation). (4) Washington has a strong interest in adjudicating the application of its laws to its residents. (6) For the same reasons, a Washington forum is critically important to Wade's interest in effective relief. (5) Seeking the most efficient judicial resolution of this controversy weighs in neither side's favor, as Washington courts may resolve it as efficiently as any other state's.

Only two factors weigh, ever so slightly, in Elemis's favor. True, (7) there are alternative fora in New York or Delaware. But that is true virtually by definition in any specific jurisdiction case. For its part, Elemis argues only that (2) the burden on it of defending this action in Washington would be "immense." Mot. 10. Perhaps Elemis wishes to conjure images in the Court's mind of luckless corporate officers dragging boxes of papers across the country. Of course, in a case about electronic communications in an age of electronic discovery, such images are mere fantasy. Elemis's lawyers are in Seattle or Los Angeles, *see id.* at 17; the bulk of written discovery

---

[3] While Wade bears the ultimate burden of showing jurisdiction, lack of *personal* jurisdiction is a *personal* defense subject to waiver or forfeiture. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 144 (2023); *see* Fed. R. Civ. P. 12(h)(1). And, again, it is Elemis's burden to show unreasonableness at this stage of the analysis. *See Burri Law*, 35 F.4th at 1213. Accordingly, arguments not raised in Elemis's motion are forfeited. *Chen v. Wash. State Dep't of Children, Youth & Families*, 2025 WL 2536639, at *18 (W.D. Wash. Aug. 29, 2025) (citing *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018)) ("The usual rule is that arguments ... omitted from the opening brief are deemed forfeited.").

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

7

will be produced electronically; and depositions may be held remotely. In other words, the ordinary tools of discovery management will suffice to protect Elemis from any undue burden.

Aside from the nine-factor test, Elemis argues that finding jurisdiction here would in effect subject it to jurisdiction everywhere. *See id.* at 10. "That may be true, but not unfair, if the contacts [Elemis] makes in all 50 states are like its [Washington] contacts. But it may not be true, depending on whether all 50 states have laws, like [Washington], protecting their citizens from what [Elemis] allegedly does in its regular course of business, laws which [Wade] claims [Elemis] violated here." *Briskin*, 135 F.4th at 761. It is Elemis's choice to sell and market its products in all 50 states. It is hardly unreasonable to hold Elemis responsible for the consequences of that choice. Assertion of jurisdiction here is not unreasonable.

***

Wade has shown prima facie that Elemis is subject to specific personal jurisdiction in Washington. Its Rule 12(b)(2) motion should therefore be denied without more.

**B.        Alternatively, the Court should allow discovery before final decision.**

If, however, the Court concludes Wade has failed to make a prima facie showing of jurisdiction, still the Court should deny Elemis's motion without prejudice to refiling after discovery. Where "the jurisdictional facts are intertwined with the merits," such that "a decision on the jurisdictional issues is dependent on a decision of the merits," it is "preferable" that the jurisdictional determination "be made at *trial*" to avoid "the risk of prejudicing [plaintiff's] case on the merits." *Data Disc*, 557 F.2d at 1285 n.2 (emphasis added). Just that prejudice threatens Wade here, because jurisdiction and the merits are almost entirely coextensive. CEMA liability attaches to anyone who "initiate[s] the transmission, conspire[s] with another to initiate the transmission, or assist[s] the transmission" of commercial email "[c]ontain[ing] false or

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

8

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

misleading information in the subject line" to an email address "that the sender knows, or has reason to know, is held by a Washington resident." Wash. Rev. Code § 19.190.020(1). As illustrated above, there is no reasonably conceivable way this prohibition could be violated without subjecting the violator to specific personal jurisdiction in Washington. Put differently, no out-of-state defendant could violate this prohibition without committing an intentional act aimed at Washington that defendant knew would likely cause harm to people living in Washington. Indeed, the only element of Wade's liability case *not* included in the jurisdictional case is the deceptiveness of the email subject lines. In short, if Wade wins on the merits, Elemis loses on jurisdiction.

Though plaintiffs in cases of intertwinement must still "establish a prima facie showing of jurisdictional facts" to ultimately defeat defendant's Rule 12(b)(2) motion, they are entitled to the support of "affidavits *and perhaps discovery materials*." *Data Disc*, 557 F.2d at 1285 n.2 (emphasis added); *see also, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.") (internal quotation marks omitted)). In this case, it's "discovery materials" or nothing. Wade is an ordinary consumer with no other relationship to Elemis. There is no affidavit she, or anyone like her, could execute that would speak to the details of what Elemis knows, infers, or ought to know about the recipients of its marketing emails.

The Court is "vested with broad discretion to permit or deny discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," discovery "should ordinarily be granted." *Id.* at 1093. A favorable exercise of discretion is warranted here. The information to be discovered—namely, Elemis's audience segmentation and targeting efforts—is inaccessible to Wade otherwise. *See Powerteq, LLC v. Moton*, 2016 WL

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

9

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

80558, at *3 (N.D. Cal. Jan. 7, 2016) (allowing discovery on defendant's Rule 12(b)(3) motion) (quoting *Hayashi v. Red Wing Peat Corp.*, 396 F.2d 13, 14 (9th Cir. 1968)) ("[T]he trial court may permit discovery … and indeed should do so where … the relevant evidence is peculiarly within the movant's possession."); Compl. ¶ 89. Though any Rule 12(b)(2) dismissal would nominally be without prejudice, *see* Fed. R. Civ. P. 41(b), because of the inextricable intertwinement of jurisdiction with the merits, Elemis is likely to argue issue preclusion of the merits if Wade were to refile this case in a court with jurisdiction, sharpening the need for fulsome disclosure before any jurisdictional ruling. *See, e.g.*, *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1208 (10th Cir. 2001) (affirming defense summary judgment on issue preclusion of merits by prior jurisdictional determination) ("All the claims pleaded in Matosantos' Kansas complaint are based on the underlying issue decided in the Puerto Rico district court [on a motion to dismiss for lack of personal jurisdiction]."). Even absent the threat of preclusion, granting Elemis's motion on the bare papers would necessarily entail a negative determination of the bulk of Wade's liability theory—all but deceptiveness—on the strength of eleven unsworn paragraphs not subject to cross-examination and without any genuine opportunity for Wade to develop competing facts.

Finally, dismissal now would punish Wade for her willingness to work with Elemis in good faith on the conduct of discovery while its motion is pending. As stated in the parties' Rule 26(f) conference report, Wade propounded initial discovery requests more than a month ago, on March 9. *See* Parties' Joint Status Report 5 (Mar. 31, 2026), ECF No. 27. She also agreed that no response would be due while the motion is pending. *See id.* Wade seeks discovery of, among other things, "records demonstrating that Defendant knew its emails were being sent to solicit consumers located in Washington"—the very issue at the heart of Elemis's jurisdictional arguments. *Id.* at 4;

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

10

*see also id.* ("Additional discovery topics include … Defendant's knowledge of and involvement in the deceptive email practices alleged in the operative Complaint"). Dismissal without the opportunity for discovery would therefore punish Wade for declining to choke the Court's docket with discovery disputes while this case is still in its infancy. For all these reasons, denying discovery would be grossly unfair, prejudicial to Wade's claims, and hostile to the judicial truth-seeking function. If the Court concludes Wade has not made a prima facie showing of jurisdiction, therefore, the Court should nevertheless deny Elemis's motion without prejudice to renewal at summary judgment or trial.[4]

## II.      Elemis's Rule 12(f) motion should be denied.

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Consideration of a Rule 12(f) motion must begin with the Rule's "plain meaning": that is, the movant must show that the matter to be struck is "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). Rule 12(f) is *not* a vehicle for assessing the legal sufficiency of any allegation; that is the office of Rule 12(b)(6), *id.* at 974., or, when it comes to class allegations, Rule 23. *Greenberg v. Amazon.com, Inc.*, 2026 WL 26011, at *3 (W.D. Wash. Jan. 5, 2026).

---

[4] If the Court allows discovery to proceed, it should not be limited to the jurisdictional issues. *See Pag-Daly City, LLC v. Quality Auto Locators, Inc.*, 2013 WL 12149704, at *2 (N.D. Cal. Jan. 25, 2013) ("Because the merits of plaintiff's claims are intertwined with facts related to jurisdiction, this discovery is not limited to jurisdictional facts."). Because, as shown above, the merits of Plaintiff's claims are inextricably intertwined with the jurisdictional issues, the line between them is blurry or illusory. Ordering jurisdiction-only discovery, therefore, risks interminable litigation about litigation. *Contra* Fed. R. Civ. P. 1. Instead, the Court should honor Wade's right to present her jurisdictional case "in a coherent, orderly fashion and without the risk of prejudicing [her] case on the merits" by taking up the two issues together at summary judgment or trial, assuming Elemis will choose to renew its jurisdictional arguments. *Data Disc*, 557 F.2d at 1285 n.2.

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

"Striking class allegations is particularly disfavored before discovery may clarify class allegations." *Whittaker v. Freeway Ins. Servs. Am., LLC*, 2023 WL 167040, at \*5 (D. Ariz. Jan. 12, 2023).

Elemis does not argue that any of Wade's class allegations are "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone*, 618 F.3d at 973–74. Indeed, outside of Elemis's recitation of the Rule 12(f) standard, none of these terms even appears in its motion. That should be the beginning and the end of its arguments. Nevertheless, Wade addresses the merits, such as they are, of Elemis's arguments below. None affords Elemis any relief.

### A.    The negative implications of the Commerce Clause do not destroy commonality or predominance.

Elemis argues that Wade will be unable to show commonality under Rule 23(a)(2) or predominance under Rule 23(b)(3) because the negative implications of the Commerce Clause will require individualized per-class-member, per-email inquiries into whether the class member was physically located within Washington when they received each challenged email. *See* Mot. 10–15. Though Elemis's Commerce Clause arguments reference both commonality and predominance, they are clearly keyed only to predominance. Indeed, individualized affirmative defenses *cannot* destroy commonality, which necessarily depends only on plaintiff's prima facie case. *See Cork v. CC-Palo Alto, Inc.*, 2021 WL 3373582, at \*6 (N.D. Cal. Aug. 3, 2021) (citing among others *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1114 n.3 (9th Cir. 2014)). Elemis's arguments as to Wade's prima facie case are addressed below. *See* part II.B, *infra*. Here, therefore, Wade disregards Elemis's procedural confusion and addresses only the substance of its argument that individualized Commerce Clause inquiries will overwhelm class litigation. They will not, because the Commerce Clause has no application here. Three decisions from this Court and its

sister court for the Eastern District of Washington have reached the same conclusion in recent months, and Elemis offers no reason to depart from this unbroken line of decisions now. *See Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Kempf v. Fullbeauty Brands Ops., LLC*, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026).

The Constitution expressly confers on Congress the power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3. By negative implication, the Supreme Court has held, states lack the power to "discriminate against interstate commerce" or "impose undue burdens on interstate commerce." *South Dakota v. Wayfair*, 585 U.S. 162, 173 (2018). "Although it is not a clause in the Constitution," this doctrine is called the "dormant" Commerce Clause. *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025). "[E]xtreme caution is warranted" before a court preempts otherwise valid state action on this basis. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023), *aff'g* 6 F.4th 1021 (9th Cir. 2021). After all, "the Framers equipped Congress with considerable power to regulate interstate commerce and preempt contrary state laws." *Id.* Indeed, Congress has exercised just that power as to commercial email in the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. §§ 7701–7713. There, Congress considered the appropriate balance of state and federal power over commercial email, specifically in light of "the inherently interstate nature of e-mail communications," S. Rep. No. 108-102, at 21, and enacted the CAN-SPAM Act's preemption provision to address it. *See* 15 U.S.C. § 7707(b). Congress struck the balance by expressly declining to preempt state rules, like CEMA, that prohibit "falsity or deception" in commercial email, *id.* § 7707(b)(1), while saying nothing about any purportedly "extraterritorial impacts" such rules might have. *Cf. Pork Producers*, 598 U.S. at 390 ("[V]irtually all state laws create ripple effects beyond their borders.").

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

13

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

The Court should decline Elemis's invitation to invalidate a duly enacted state law whose operation has received express congressional blessing on the basis of Congress's power to change its mind.

### 1.    CEMA does not discriminate against interstate commerce.

The "very core" of dormant Commerce Clause jurisprudence is the antidiscrimination principle. *Id.* at 369; *see Flynt*, 131 F.4th at 923. This principle "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Pork Producers*, 598 U.S. at 369 (internal quotation marks, ellipsis omitted). It has no application here. By its plain terms, CEMA does not facially discriminate against interstate commerce. *See Washington v. Heckel*, 24 P.3d 404, 409 (Wash. 2001) (rejecting dormant Commerce Clause challenge to CEMA) ("The Act is not facially discriminatory."); Wash. Rev. Code § 19.190.020(1) (providing that "[n]o person" may send prohibited commercial email from a computer in Washington or to a Washington resident); *id.* § 19.190.010(11) (defining "person" without reference to residency). CEMA, as relevant here, even-handedly protects Washington residents from commercial spam, no matter who sends it. *See Heckel*, 24 P.3d at 409. Elemis does not argue otherwise. Thus far afield from the "core" of dormant Commerce Clause jurisprudence, *Pork Producers*, 598 U.S. at 369, Elemis "begin[s] in a tough spot." *Id.* at 370. It never escapes.

### 2.    CEMA does not violate any prohibition on extraterritorial regulation emanating from the negative implications of the Commerce Clause.

Elemis argues principally that CEMA is preempted by the Commerce Clause's negative implications to the extent it protects Washington residents from deceptive commercial spam even when those residents fortuitously happen to be located outside Washington's borders when Elemis presses "send" on its emails. This argument fails. The negative implications of the Commerce Clause do not establish any rule that states may protect their residents from out-of-state actors'

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

14

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

depredations only if and only to the extent that those residents happen to be located within the state's borders when those depredations are targeted at them.

To begin with, *Pork Producers* "substantially clarified" the meaning of cases (like *Healy v. Beer Institute*, 491 U.S. 324 (1989), relied on by Elemis, *see* Mot. 11–12) invoking a supposed anti-extraterritoriality principle impliedly emanating from the Commerce Clause. *Flynt*, 131 F.4th at 924. The Court made clear that its extraterritoriality cases are fundamentally antidiscrimination cases: "each [case] typifies the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Flynt*, 131 F.4th at 924 (quoting *Pork Producers*, 598 U.S. at 371). Statutes successfully challenged as impermissible extraterritorial regulation each had the "*specific* impermissible extraterritorial effect" of "prevent[ing] out-of-state firms from undertaking competitive pricing or depriv[ing] businesses and consumers in other States of whatever competitive advantages" they had. *Id.* (quoting *Pork Producers*, 598 U.S. at 374) (internal quotation marks omitted). These cases thus enforced the core prohibition on "impermissible discriminatory purpose[s]," *not* "any broader, freestanding extraterritoriality principle." *Id.* (citing *Pork Producers*, 598 U.S. at 373).

*Healy* and the other extraterritoriality cases are nothing like this one. There is nothing like the "*specific*" discriminatory effects condemned by *Healy* and cases like it, *Flynt*, 131 F.4th at 924 (quoting *Pork Producers*, 598 U.S. at 374), and indeed no discriminatory or protectionist effect of any kind. There is no appreciable impact on interstate commerce at all. The negative implications of the Commerce Clause simply do not enforce "any broader, freestanding extraterritoriality principle" that Elemis's "residents temporarily out-of-state" hypothetical might be supposed to violate. *Id.*; *see also id.* at 929 (same). That should be the end of the extraterritoriality inquiry.

But even a full-throated reading of any supposed extraterritoriality principle cannot save

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

15

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

Elemis. Washington plainly has a legitimate interest in protecting Washington residents from conduct Washington deems harmful or undesirable. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("[P]rotecting local investors is plainly a legitimate state objective"); *Heckel*, 24 P.3d at 410 (discussing harms from "[d]eceptive spam" to "individual Internet users" protected against by CEMA). And Elemis's localization arguments obscure the nature of the intangible spam email at issue here. Transactions involving tangible goods may in principle "take[] place wholly outside of a State's borders." *Healy*, 491 U.S. at 336. Intangible commercial spam, by contrast—particularly in light of "the inherently interstate nature of e-mail communications," S. Rep. No. 108-102, at 21—may exist and have effects in several places at once, chief among them the home state of the recipient, no matter where she happens to be located at any particular time. For example, the deceptive spam Elemis might send to a hypothetical, temporarily out-of-state Washington resident might arrive both on the phone she carries with her and on her desktop at home in Washington. Perhaps Elemis's hypothetical traveler forgets to check her email while traveling or forgets her phone at home, such that she does not actually view Elemis's deceptive spam until she's back in Washington. Perhaps she reads Elemis's deceptive spam while out-of-state but hurries home to make a purchase before its sale "ends." The point is that Washington's interest in protecting its residents from commercial spam, irrespective of where are those residents are at any given time, cannot be analogized to any attempt to regulate transactions that "take[] place wholly outside of a State's borders." *Healy*, 491 U.S. at 336.

Thus, even within the terms of the "freestanding extraterritoriality principle," *Flynt*, 131 F.4th at 929, disavowed by *Pork Producers*, Elemis has simply failed to explain why it should matter at all where a Washington resident happens to be located at the particular moment when Elemis presses "send" on a piece of deceptive spam addressed to her. *See Heckel*, 24 P.3d at 412

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

16

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

(rejecting extraterritoriality challenge to CEMA) (CEMA "does not burden interstate commerce by regulating when or where recipients may open the proscribed … messages."); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 842 (Md. Ct. Spec. App. 2006) (rejecting extraterritoriality challenge to CEMA-like statute) ("MCEMA does not regulate exclusively extraterritorial conduct because its focus is not on when or where recipients may open the proscribed ... messages." (internal quotation marks omitted)); *Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr. 2d 258, 266 (Ct. App. 2002) (rejecting extraterritoriality challenge to CEMA-like statute) ("[The statute] does not purport to regulate when or where [spam] recipients may read their e-mail"). What matters is Washington's interest in protecting Washington residents. *See Edgar*, 457 U.S. 624 at 644; *Heckel*, 24 P.3d at 412 ("[T]he Act addresses the conduct of spammers in targeting Washington consumers."); *MaryCLE*, 890 A.2d at 842–43 ("[T]he Act addresses the conduct of spammers in targeting Maryland consumers." (internal quotation marks, brackets omitted)). In short, by protecting Washington residents from deceptive commercial email no matter where they happen to be located when the email is sent, CEMA runs afoul of no constitutional command. Elemis's extraterritoriality arguments fail.

### 3.      CEMA does not unduly burden interstate commerce.

Elemis's half-hearted, one-paragraph *Pike* argument likewise fails. *See* Mot. 12–13. Under *Pike*, challengers must first show that the challenged law "imposes a substantial or significant burden on interstate commerce," and then that this burden is "clearly excessive in relation to the putative local benefits." *Flynt*, 131 F.4th at 925; *see also id.* at 931 (same). As *Pork Producers* makes clear, the point of *Pike* balancing is to ferret out any "discriminatory purpose[s]" behind the "practical effects" of "facially neutral" laws. *Pork Producers*, 598 U.S. at 377–78. Like the *Pork Producers* plaintiffs, Elemis here "nowhere suggest[s] that an examination of [CEMA's] practical

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

17

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

effects in operation would disclose purposeful discrimination against out-of-state businesses." *Id.* at 379. Beginning so far "outside *Pike*'s heartland" is "not an auspicious start." *Id.* at 380.

Inauspicious indeed: Elemis's argument pays bare lip service to each step, and thus stumbles at all three. *See* Mot. 13. As for step one, the question is whether the law "imposes a substantial or significant burden on interstate commerce." *Flynt*, 131 F.4th at 925. Burdens on interstate commerce are "substantial" or "significant" under *Pike* "only in rare cases." *Pork Producers*, 6 F.4th at 1032. Mere "compliance costs, without more," do not qualify. *Id.*; *see also Flynt*, 131 F.4th at 932 (noting both *Pork Producers* decisions rejected *Pike* challenges to a statute imposing "millions (if not billions)" in national compliance costs). Here, CEMA compliance can impose no more than a fraction of the compliance costs in *Pork Producers* and poses absolutely no threat to "the free flow of commerce from state to state." *Flynt*, 131 F.4th at 932–33 (quoting *Pork Producers*, 6 F.4th at 1033).

To the contrary, CEMA's "requirement of truthfulness … does not burden commerce at all but actually facilitates it by eliminating fraud and deception." *Heckel*, 24 P.3d at 411 (internal quotation marks omitted) (rejecting *Pike* challenge to CEMA). And in the absence of any state law requiring falsity or deception in the subject lines of commercial email, there can be no threat of inconsistency with this "requirement of truthfulness." *Id.* In any event, as explained above, Congress has expressly approved state regulation of false or deceptive commercial email, even in light of its "inherently interstate nature," S. Rep. No. 108-102, at 21, by excepting rules that prohibit "falsity or deception," 15 U.S.C. § 7707(b), from CAN-SPAM preemption. "Congress, in other words, chose to abandon any search for uniformity in dealing with the problems" of false or deceptive commercial email "and decided to suffer a medley of attitudes and philosophies on the subject." *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 104–05 (1963)

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

18

(discussing preemption exception in 29 U.S.C. § 164(b)). CEMA imposes no "significant" or "substantial" burden on interstate commerce. *Flynt*, 131 F.4th at 932.

As for steps two and three of *Pike* balancing, Elemis makes no serious effort to ascertain the local benefits promoted by CEMA or to balance them against the (nonexistent) burdens on interstate commerce imposed by CEMA. But the Washington Supreme Court has articulated CEMA's "local benefits" in detail:

> The Act protects the interests of three groups—ISPs, actual owners of forged domain names, and e-mail users. … To handle the increased e-mail traffic attributable to deceptive spam, ISPs must invest in more computer equipment. … Along with ISPs, the owners of impermissibly used domain names and e-mail addresses suffer economic harm. … Deceptive spam harms individual Internet users as well. … [T]he use of false or misleading subject lines further hampers an individual's ability to use computer time most efficiently. When spammers use subject lines such as 'Hi There!,' 'Information Request,' and 'Your Business Records,' it becomes virtually impossible to distinguish spam from legitimate personal or business messages. … [A]ll Internet users (along with their ISPs) bear the cost of deceptive spam.

*Heckel*, 24 P.3d at 410 (internal quotation marks, footnote call numbers omitted); *cf. Flynt*, 131 F.4th at 925 ("[U]nless the benefits of the state's law are 'illusory,' courts typically accept the state's articulation of the law's claimed benefits.").

Against this, Elemis's only argument is that there is "virtually ***no***" local benefit from CEMA as to Washington residents who fortuitously happen to be outside Washington's borders when Elemis presses send on its deceptive commercial emails. Mot. 13. That simply ignores *Heckel* (as well as *Edgar*, 457 U.S. at 644 (Protecting "local investors," as opposed to "non*resident* shareholders," is "plainly a legitimate state objective." (emphasis added))), whose articulation of CEMA's benefits does not depend on a Washington resident's physical location at any particular time. *Pike* does not require states to engage in panoptic surveillance of its residents' locations before protecting them; it simply prohibits unduly burdening interstate commerce as a cover for

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

19

economic protectionism. Elemis makes no genuine argument that CEMA does so. Its *Pike* challenge fails.

***

Because Elemis's Commerce Clause arguments fail, so too do its predominance arguments that depend on them. *See* Mot. 13–15. Individualized Commerce Clause inquiries will not overwhelm class litigation because no such inquiries are required.

**B.    Proving CEMA liability does not destroy commonality or predominance.**

As a fallback, Elemis argues that the proof required to prevail on *any* CEMA claim necessarily renders such claims unsuited for class treatment. *See* Mot. 15–16. Like Elemis's Commerce Clause arguments, this one is off to an inauspicious start. Courts have recognized that consumers' claims for false or misleading mass marketing are unusually *well* suited to class treatment. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer … fraud"); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024) (same). Elemis's situation does not improve upon even cursory examination.

Elemis argues first that "individualized inquiries" will be required to assess whether each challenged email subject line is false or misleading. Mot. 15. Neither Rule 23(a)(2) nor Rule 23(b)(3) are even implicated by this argument. Any eventual class will be composed of *persons*, not *emails*. Put differently, the same subject-line-by-subject-line analysis would be required even if Wade had brought this action only on her own behalf. And because that analysis applies an objective standard, *see* Wash. Rev. Code § 19.190.020(1)(b); *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 9 (Wash. Ct. App. 2019) (A statement may be literally true but nevertheless actionably misleading if it is "likely to mislead a reasonable consumer" (internal

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

20

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

quotation marks omitted)), it readily satisfies Rule 23(a)(2) and Rule 23(b)(3). *See DZ Reserve*, 96 F.4th at 1235. Elemis cannot seriously argue that the Rules require Wade to institute separate, per-email lawsuits. *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim … may join, as independent or alternative claims, as many claims as it has against an opposing party.").

Elemis argues next that similarly individualized inquiries will be required to prove class members' residency and Elemis's actual or constructive knowledge of the same. Mot. 15. Again, Elemis simply omits to mention CEMA's constructive knowledge provision, Wash. Rev. Code § 19.190.020(2), which is readily amenable to objective, classwide determination: all class members' residency information is either available from the registrants of their email address domains, or it isn't. Otherwise, Elemis's actual or constructive knowledge of Wade's and putative class members' residency will rest on information *Elemis* obtains, maintains, and feeds into its marketing platform to facilitate the conduct of its mass marketing campaigns. *See* Compl. ¶¶ 89–96. That information will naturally be obtained, maintained, and deployed in bulk. Again, as with personal jurisdiction, CEMA's liability standard itself defeats Elemis's arguments: Elemis's mass marketing tools either grant it actual or constructive knowledge of their targets' residency, or they don't. Whatever the answer may be, it will be the same for Wade and all putative class members.

In any event, these questions are obviously grist for the Rule 23 mill. Nothing here comes within a country mile of "(1) an insufficient defense" or matter that is "(2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone*, 618 F.3d at 973–74.

### C.     Exhibit A to the Complaint survives.

Finally, Elemis argues that Exhibit A to Wade's Complaint should be struck. Mot. 16. Again, its arguments sound in legal sufficiency, not scandalousness or impertinence. *Contra Whittlestone*, 618 F.3d at 974. That misfire notwithstanding, Wade nowhere claims entitlement to

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

21

sue for email subject lines she did not actually receive. *See* Wash. Rev. Code § 19.190.040(1) (allowing damages "to the recipient" of prohibited emails). Rather, Exhibit A is intended merely as a housekeeping tool to streamline presentation of the class definition. *See* Compl. ¶¶ 103, 106. Elemis nowhere suggests that, at class certification, Wade will not be entitled to define the universe of email recipients she seeks to represent. Even on the implausible assumption that the recipient of one mass marketing email does not receive *all* of the mass marketer's emails, any mismatch between the emails Wade received and those received by putative class members may be addressed under Rule 23(a)(3) or Rule 23(a)(4). Elemis's invitation to short-circuit the Rule 23 inquiry under Rule 12(f) should be declined.

## CONCLUSION

The Court should deny Elemis's motion to dismiss.

*[Counsel signatures to follow on next page.]*

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

22

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

Date:    April 17, 2026

Respectfully submitted:

*/s/ Lynn A. Toops*
Lynn A. Toops (*pro hac vice*)
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*I certify that this memorandum contains 6,642 words in compliance with the Local Civil Rules.*

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Gerard J. Stranch, IV*
Michael C. Tackeff (*pro hac vice*)
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*

**\* Applications for admission *pro hac vice* forthcoming**

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

23

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481

## <u>CERTIFICATE OF SERVICE</u>

I, Lynn A. Toops, hereby certify that on April 17, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 17th day of April, 2026.

/s/ Lynn A. Toops
Lynn A. Toops (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com

PLAINTIFF'S BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

24

COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481